There were three issues for the district court to decide. She got the first two of them correctly and went astray only on the third. The first, she correctly determined that transforms interest in the lease ceased to exist when the order that had assigned the lease to transform was set aside on appeal. This is, as the Supreme Court referenced in the appeal in this case, typical appellate relief. On the second issue, she correctly held that Sears had not made a stand-alone assumption during the statutory period. It had neither requested nor provided the evidence that would have been necessary for a court to find that it could provide adequate assurance on its own. Then the question was, what is the consequence of this? And it was with respect to this third issue that the court erred. The statute, 365D4, states explicitly that when a lease has not been assumed or assigned within the statutory period, quote, the lease shall be deemed rejected and the trustee shall immediately surrender the non-residential property to the lessor. So to ask you on that issue, obviously she concluded that it was not a true lease under our RPI case. I know there's a waiver issue that I'm sure you're going to discuss, but I want to put the waiver issue aside. And I want you to explain to me why, if there is no waiver, why, as the district court concluded, RPI wouldn't be exactly on point because this lease seems to share the essential characteristics that RPI said made it not a true lease. Well, Your Honor, in RPI, as in its predecessor, PCH, the factual record for making such a determination had been established in the bankruptcy court. PCH actually refers to the review of the factual determination that it is not a true lease as one that it's reviewing for substantial evidence. That's a very discretionary appellate standard of review. Here, the facts upon which to make a determination whether the lease is a true lease were never established or introduced in the bankruptcy court. Judge Walker, the RPI decision focused on two things, two components that made it not a true lease. It's a 99-year term, and the rent was prepaid, and then there was an equitable consideration at the end that the landlord should not get a windfall. And with respect- We don't think there needs to be a hearing to establish those things. So with respect to the second- Hold on, aren't those undisputed? That's undisputed. No, Your Honor. In fact, in RPI, the court stressed that because the rent was prepaid, the lessee had finished making any payments it was going to make to the lessor. That's not true here. There are annual payments of over $1 million that the lessee makes to the lessor, which are part of the mall's cost. The mall pays taxes, pays insurance, pays for common area maintenance, and those costs that the mall is incurring are then going- But that's like in a triple-net lease. That's where you're, you know, you have additional amounts other than just the use of the premises. And those can get distributed in different ways. And I thought in RPI, Judge Walker said that that was not determinative. It was the purchase aspect of the transaction that was significant. The court tried to make clear that those types of features in a triple-net lease would not mean that those were also not true leases. And here we have, as in those triple-net leases, the ongoing payments by the lessee to the lessor. So that distinguishes. We also have facts that are not evident in RPI, because this is- Can I just ask you to pause on the part you just finished? Is there anything that you just said that's not evident from the record? So the other thing that I was going to say about the record, Your Honor- Just in response to what you were just discussing- Those facts are evident in the record, Your Honor. So I guess what I just want to back up, and you can move on to your second point in a minute. All the points that I thought we were talking about there is what would be the evident need to go before the bankruptcy court to make additional factual determinations? But I thought what you're saying, all the points you've just been making, are based on the record that is before us. It was before the district judge. Those are. They are facts that distinguish our case from RPI. No, I get it, but that's a different thing, because I thought your lead argument was not, this is different from RPI. I thought your lead argument is one needs to make additional factual determinations to figure out if we're the same as RPI. So don't be making that decision in the district court. Don't be making the decision here. But if you're relying on facts that are in the record, that doesn't really support what I thought your first point is. So, Your Honor, I do want to make the other point as well. And that is that this lease is wholly unlike RPI because it is an enormous property that Mall of America owns. And the Sears property is a very small island within it. And that. I'm sorry, though, I'm a little hung up on not following accordingly what's your first point, which is what's the additional factual determination that needs to be made? Because now it seems like you're moving to another second point that is based on stuff that's in the record. Well, what are these hypothetical findings that need to be made that have not been made? In PCH, the court said that it was proper to take parole evidence about the intent of the parties as to the nature of the agreement. And so that evidence would have been developed in the bankruptcy court. I'm sorry, parole, the nature of the agreement. Isn't that a matter of law based on the terms of the agreement? No, in PCH, the court reviewed that for clear error on substantial evidence review as a factual determination that had been made by the fact finder in the first instance. But I do want to. So I think that the record was not established because they did not raise it in the bankruptcy court. So you're saying there's parole evidence that could change the essential nature of the lease or purposes of the true lease designation under RPI. The parole evidence was determinative and admitted properly in PCH. But I do want to get to the broader forfeiture point, which was that never in the bankruptcy court did the other side argue that it was not a true lease, nor did they for five years in which we were litigating this case. The district court concluded on that issue that there was not a reason to do that at that point in time, that the first time it would have made sense for them to defend on this ground would have been at this point in time. Isn't that determination subject to an abuse of discretion standard? No, Your Honor, because the whole question where the district court made a mistake was believing that the RPI conclusion relates only to the forfeiture, the surrender language. I'm not sure I agree with you on that. You're sort of suggesting this is like a statutory interpretation question, where what does lease mean lease for the same thing for purposes of all the different sections. But we're talking about waiver. And the question about waiver is did the parties in entering these stipulations and conducting themselves the way they did over the years intentionally relinquish the right? That's waiver. So we don't have to get into statutory interpretation. We just have to look at, or the district court in the first instance looks at the conduct of the parties and the issues that were raised and the arguments that were made. And she concluded that they didn't intentionally relinquish that right. They didn't say this is a lease for purposes of this section. And she concluded based upon, and I think you would agree this is an abuse of discretion standard. I don't think so because she's acting as an appellate court. And so I think it's her determination is one that this court would review under whatever the same standards are. So I don't think that there's deference to district court's determination of waiver in the bankruptcy court. The briefing that was before her and the issues that were raised before and the order of the issues. Because she's construing documents that were filed in the bankruptcy court. Did the bankruptcy court make a determination as to whether this was a stipulation? No, no. So how was she exercising her appellate function? Well, she's reviewing a record that she didn't herself make. But I want to make another point, which is that- No, no, no. Actually, just stick with this one. Okay. Again, I'm not quite understanding your point that she was somehow engaging in appellate review. Because that suggests that somebody else decided something. And she was figuring out whether that somebody else had made the correct decision. But nobody else had made this decision about a stipulation, correct? Nobody else had made a determination about waiver. My impression is that she was making the determination in the first instance, right? Yes. Based on documents that were filed in the bankruptcy court and litigation that had occurred in the bankruptcy court for years before it came to her. But the other point I want to make is that the district court had agreed. In fact, in her initial order on appeal from the bankruptcy court, she held Transform and Sears to their stipulation that this was a shopping center lease for purposes of section 365B3. So she understood that the parties had stipulated and that Sears and Transform were bound that this was a lease, and in particular a shopping center lease, for purposes of 365B3. She did not deal with the explicit language in which the parties all stipulated that the deadline for assuming or assigning a lease pursuant to 365B4. She did deal with that. She said that that was just to perform an extension of time, and she did not view that as an intentional relinquishment of any right. They were just extending the time. So, Your Honor, I think that she also said that Transform didn't get any benefit out of it, but Transform explicitly says in the stipulation, this is at A1645, that it was entering into the stipulation because buyer desires additional time to determine whether it's going to designate the lease for assumption and assignment. So the buyer was getting a benefit by stipulating to an extension of a deadline that it agreed would otherwise require action by one date to extend it to another. And our client, the mall, was giving up something, which was a right to a decision by May 13th, to extend it. So the parties had stipulated both that it was a lease for purposes of the shopping center provisions of section 365, and that it was a lease subject to the provisions of 365D4, which are the provisions at issue here. And that B3 stipulation, which is more than the timing, right? Your argument, I understand, is that it was more than just a, whatever that was, D41A or D4 stipulation, which would presumably apply to the timing, but also the B3 stipulation, which is the lease is a shopping center lease. That means that they're also stipulating that it's something that will either get assumed and assigned.  And if it is going to be successfully assumed and assigned, it has this whole list of criteria that need to be satisfied. So I understand your argument. Once they stipulated that all these requirements had to be satisfied, they can't come back now and say, turns out it was never a lease and none of those criteria needed to be satisfied, even though we said it did. It turns out they did. That's your argument, right? Yes, that's my argument, Your Honor, because they agreed that 365 applied. Now, the district court said, well, I'm not going to hold them to that stipulation, which she acknowledged was a stipulation, and already in an earlier decision had actually held them to the stipulation that it was a shopping center lease for purposes of 365B3. That means that 365 applies because a lease is a lease is a lease. No, but why can't parties say, look, we're going to try to satisfy this shopping lease assignment provision under D3, but if it does not, if whatever it is gets rejected, we're going to defend against forfeiture of the lease under D4. Why can't they take that position as litigators? Forget about statutory interpretation. Their argument is we're going to try to fit in within this shopping center lease provision and make an assignment pursuant to it. But if whatever reason the court rejects it, we are going to fight under 365D4 and argue that's outside the whole scope of the statute. And they absolutely should have argued all of these things in the alternative in the bankruptcy court. And then the bankruptcy court could have decided all of these things, including whether Sears could satisfy assumption on its own at a time when it was administratively insolvent. Okay, I'll ask them about that. Before you sit down, I just want you to, the equitable consideration that Judge Walker mentioned at the end of RPI, I want you to explain to me why this isn't also exactly the situation here. He said RPI has received the substance of its bargain for consideration to permit it to recapture the lease premises with the manufacturing facility improvements that amount to a windfall to RPI. Isn't that exactly what would happen here? There have been improvements to the building, millions of dollars of improvements to the building, right? Correct? Yes, Your Honor. And the view is that your client should not reap a windfall just because Sears went bankrupt and get out of a lease that they don't think is a favorable one anymore and get a building with millions of dollars in improvements. What's your response to that? I think the court was asking and answering a different question there. To be fair, I think the court was answering the question whether it was a lease for purposes of 365 at all. And it said that Congress had specified in Section 502 that the lease provisions don't apply to things that are not true leases. And so 365 did not apply at all to the lease in question there. Here we have both stipulations and five years of litigation history that this is a lease for purposes of the lease provisions. So to say that it would be inequitable is simply to say that the consequence that Congress specified with unmistakable clarity in the statute is too harsh. And it's not for a court to set that aside. Thank you.  We'll hear from Mr. Silber. Yes. Good morning and may it please the court. I'm Greg Silbert from Weill for Sears. Let me start with your question, Judge Bianco. So what we have here is a 100-year lease for a property that Sears built at its own expense. Apart from rent of $10 per year that was prepaid, MOAC signed away all of its financial interest in that property for the entire 100 years. Now with 67 years left on the lease, MOAC says that it is entitled to the entire property. That is clearly a gross inequity as found in RPI and as a district property. So is the gist of your RPI argument that, look, this is functionally an asset. It's not an unexpired lease. It shouldn't be governed by 365. It's really an asset, right? That's right, Judge Arnold. It's exactly the same as an RPI. So let me ask you this. If this is so obvious, why for five years did you litigate as though it was an unexpired lease? And this thing has bounced to this court. It's been to the Supreme Court. It's been back. It's been up. It's been down. And all of this could have been avoided by saying, you know what, this is not an unexpired lease. This is an asset. So we don't need to assign it. We don't need to assume it. It's an asset. It's like owning a car or a table or a building. It might have been, Your Honor. That argument was available to our friends, Transform. They were the assignees, not Sears, right? Transform could have made the argument that the same reasoning that this court applied in RPI should apply to B3. Now, that question has never been presented or decided by any court. It was certainly available to them. And had they made that argument, maybe they would be holding the lease today. But they didn't. And so that assignment under B3 was vacated. But when the assignment was first approved by the bankruptcy court mistakenly, there were still eight days left on the D4 clock to assume, right? So when my friend said, well, we should have made all those arguments at that time, there was no reason to make all those arguments at that time. At the time in the bankruptcy court, what we were doing, the only dispute was about assignment to Transform. And if the bankruptcy court had then given what everyone now says is the right decision, which is no, you can't assign it, we would have stood up and we would have assumed it and we would then have also made the RPI argument to avoid forfeiture. The only reason we're here and the only reason that MOAC claims that it now has a right to take the property for itself, which would be a gross inequity, is because the bankruptcy court first made the wrong decision and then Transform and MOAC battled it out for five years up to the Supreme Court and back about assignment. I guess I'm just wondering, you're saying that the only reason this was battled out on the wrong grounds is because the bankruptcy court got it wrong. But the parties were the ones who had come to the bankruptcy court and said, hey, we have these leases we're going to assign. This is how it all worked. And the bankruptcy court agreed. And I guess what I'm confused about is this notion that sort of the parties would not be to blame for framing the issue in a way that eventually the court said was wrong. And that the idea that the parties had no reason to raise an issue earlier, of course the parties had a reason to raise these issues earlier. Just because they chose to fight it out on one ground that turned out to be wrong doesn't mean that they shouldn't have raised two alternate arguments. But if you put all your eggs in one basket, everybody litigates for millions of dollars, I assume, over five years. It seems like people should – why wouldn't they be saddled with the choice they made to litigate on a certain ground? Just because they convinced the court to go along with them doesn't put the blame on the court as opposed to the parties, does it? Well, I don't – I understand your question, Your Honor. I wouldn't put it in terms of blame. I think at the time our first choice was to assign the property because that was the deal that we made with Transform when Transform bought the property. That was a choice, right? Rather than structuring it as an asset sale, saying, you know, we have an asset here and it's a thing. It's not a lease. It's not an unexpired lease. It's like us selling you whatever, you know, these chairs that Sears owns. That's really what it is under RPI. He chose to structure it as the sale of – or designation and the assumption and assignment of leases. Well, RPI is not quite that clear, Your Honor. It doesn't say this is 100 percent an asset. What it says is that the agreement is a hybrid or amalgam that has characteristics of both a lease and a sale for a number of years. There's going to be a set of procedural rules that attaches whether you characterize it one way or the other. And RPI says this should not be characterized as a lease because that's not the economic reality, right? So those rules don't apply. And I know it came up in the context of D4, but it would be odd to suggest that some of the rules apply and some don't because you're characterizing it according to economic reality. I guess that's my question. Just because the parties agreed to frame it a certain way and the bankruptcy court agreed, why is it that they can't be held to the fact that they all agreed to characterize it this way for five years? I think the bankruptcy court's decision does a very good job of explaining that, and it is abuse of discretion. Explaining what? Explaining why there's no waiver or forfeiture because at the time that we – I thought that was the district court. I'm sorry. Excuse me. You're right, Your Honor. The district court.  There was no question of forfeiture. The only disputed issue was whether the assignment would go through. And the only thing that we stipulated to with respect to D4 was to move a deadline that everybody agreed should move. I thought there was also a B3 stipulation. There was a B3 stipulation. So there's more than a timing stipulation. There's also a question that it is covered by B3, which then carries various criteria for approval. Absolutely. So it wasn't just a timing stipulation. You're right. There was another component with respect to B3, and if we were here arguing that RPI applies to B3, I think you should find that that argument was waived, but we're not. We're saying that RPI applies to the forfeiture penalty of D4, which was never presented until after the five years of litigation that you mentioned and the original assignment of the lease was vacated. Then suddenly, as a debtor or the debtor's successor in interest, we were presented with forfeiture of an extremely valuable asset to the detriment of these statements creditors. So you have quite a bit, with hindsight, a better decision to argue this first. It just did not come up. It did not. It was not something that was intentionally relinquished in terms of chronologically under the statute how it would work. It only comes into effect once the assignment is rejected because then that provision, the D4 provision, is what kicks in. Exactly right, Judge Bianco. The point is it's not that you couldn't. It couldn't have been raised earlier, and maybe strategically it should have been raised earlier, but there's no evidence that there was an intentional waiver of that right. Right, and if we had intentionally handed this incredibly valuable asset over to MOAC for no money, the creditors committee would have objected. Everybody would have objected. It wouldn't have passed the business judgment rule, right? We're a debtor. We don't give away valuable assets for nothing. We keep them. And yes, we made a choice to first try to assign the lease, but there was no question of forfeiture then. And remember, we did that. We entered into that stipulation. There were 11 days left on the clock. So could we have litigated the issue then? I guess we could have. We could have run into the bankruptcy court and said, we need an emergency ruling on whether RPI applies to this lease within 11 days just to move a deadline that everybody agrees should move anyway, when what we're going to fight about is not a straightforward application of RPI to the forfeiture penalty, but whether RPI can be extended to B3, which is a question that no court has ever decided or even been presented with, right? So obviously we did the rational thing. We just stipulated to move the deadline. In no way did we think or anybody think then, you know what, like if this doesn't work out, we're just going to hand this 67-year lease, what was then longer, over 70 years, over to a landlord for nothing. No debtor would behave that way. All right. Thank you. Thank you. We'll hear from Mr. Brunstad. Good morning, Your Honors. Eric Brunstad on behalf of Transform, who is the appellee slash cross-appellant in the cross-appeal. Judge Carney, I think it is, they did not dispute the relevant facts below that allow us to conclude that this is indistinguishable from RPI. On pages two and three of the district court's decision, she summarized the facts, which they never disputed below about this being a 100-year lease, et cetera. And that was not objected to below. So they're kind of raising that for the first time on appeal. Judge Bianco, I think it's an understanding how this sort of fits into the mosaic. In both RPI and PCH, this court concluded it didn't need to decide whether it was a true lease or a sale or a joint venture. In PCH, the bankruptcy court had recharacterized it. But in this case, the court said it wasn't necessary to decide what it was. And the court concluded, based upon the record in RPI, that it was an amalgam. It was a hybrid. That's all that we needed. And I think, as the district court correctly explained, this case is indistinguishable from RPI. Now, I think another important point I'd like to start with is that what MOAC is trying to do here is put themselves in a better position than they would have occupied if they had won in the bankruptcy court. If they had won in the bankruptcy court, then the assignment would not have been made. And then Sears would have assumed the lease on its own, would have been able to pay the $10, etc. And then it would have sold it to somebody else. That's a counterfactual. I mean, maybe that's true, but we don't know because nobody asked. They didn't ask. The bankruptcy court didn't evaluate whether they could give reasonable assurances. I know both parties put in extra record footnotes suggesting that their version of an alternate reality would have come to pass. But, I mean, on both sides, that's really hypothetical to us, right? It is hypothetical, Judge Nardini. It is hypothetical. But the important point is they are trying to effect a forfeiture of this very valuable asset, whether it's described as an amalgam or a hybrid, just like an RPI or how you want to describe it. One thing I should also note, in the bankruptcy court, this was moving very fast. There were hundreds of leases. Sears was a melting ice cube. The assets had to be transferred pretty quickly. So, yes, it may have been the case that the parties could have argued about recharacterization. But as this court established in PCH and RPI, that isn't necessary to conclude that Section 365d4 simply does not apply. Can I ask you to help me conceptualize what the stipulations mean or what the consequences are? Because it seems like there's two views, right? Each party kind of puts it out. I mean, I assume both parties agree that the stipulations are valid, right? Nobody's claiming that there wasn't a stipulation. But I think there's a difference of view about what the consequences of those are, right? Yes, Your Honor. On one side, you're saying, well, this was done only for the purpose of extending the deadline. And I take it that the other side says, well, you don't really take into account what the purposes of the stipulation are. When you stipulate to something, you're stuck with it, whatever the consequences might be. So if you stipulate it was raining on a certain day, you may have done it because you were hoping evidence was going to come in. But now, whatever the consequences of stipulating that it rained, you're going to get all the consequences that flow from it. But another way to view it, it seems, I think, is the way your side is characterizing it. If we're talking about waiver, we're talking about the known intentional relinquishment of a known right that you do have to take into account the purposes of the stipulations. Yes. Am I, in your view, accurately characterizing at least what your view is? Don't worry about characterizing those types of views. But am I characterizing that properly, that sort of we should read into the stipulations an implicit purpose limitation? And if so, why? That's excellent, because what it underscores is that they're misusing the waiver doctrine. It's a known relinquishment of a known right, an intentional relinquishment of a known right. Their theory is an implied waiver theory. It's kind of like an estoppel, which they abandoned in this court. And Judge McMahon did not abuse her discretion in looking at these stipulations. And there are three of them, Appendix 1645, 1742, 2115. And they do two things. They say, we agree to extend the deadline for the hearing. And we agree that it's a shopping center. The property's in a shopping center for purposes of Section 365B3. That's all that they did. And also, there's context, Judge Nardini. And the context is, when they were asked in the bankruptcy court, they specifically said, APX 2147, we don't want the equity in that lease. They affirmingly disavowed wanting to get that. That seems like a lot to put on that. I've never been sure what that quote means. I think I'm focused more on the meaning of when you enter into a stipulation that is clearly binding. Yes. What are the limits of the implications of that stipulation? And I guess what I'm trying to understand is, I guess you're each suggesting that the other is trying to read too much into the stipulation, right? They're saying you're trying to implicitly add a purpose limitation that you didn't put in there. Because one can easily write a stipulation and say, for purposes of the deadline only, we stipulate that D14 shall be extended. But we reserve the right to argue, yada, yada. People do that all the time. Lawyers know how to write that. So I think they're suggesting that if you wanted your stipulation to be more limited to certain purposes, well, you could have easily written it in. And I think you're arguing that, no, they are the ones who should have said or demanded, if they wanted it to block what you're arguing now, then it could have been written more extensively and say something like, and it's not to be recharacterized under RPI or something, I suppose. Judge Giardini, I think RPI helps us answer this, too. Because in RPI, the trustee moved for an extension of time under Section 365 D4. And that obviously didn't mean that the trustee therefore agreed that 365 D4 applied. Then there would have been no reason for this Court's decision. So we think they are reading much too much in it. But more importantly— Well, the waiver issue might not have been raised in that case, right? We don't know whether they raised the issue they're raising now, right? That there was a waiver by virtue of the extension in RPI? We don't know, Your Honor. But Judge McMahon, I think, properly looked at these stipulations, which are ordinary courts. These happen all the time. Parties enter into these extensions of deadlines. But think of it this way, Judge Giardini. It's like a statute of limitations. Parties agree to extend the statute of limitations period by agreement all the time. It doesn't mean they agree that it would have run. It doesn't mean they agree to the merits of a claim. Yeah, but if you were to say—I mean, let me just—this is a different—I'll hypothesize a different stipulation. If you stipulate to something and you stipulate to two predicate facts that trigger a statute of limitations, we stipulate that it was raining and it was a Tuesday, and therefore you should extend the deadline. You're stuck, for all purposes in the future, saying it was a Tuesday and it was raining, right? Yes, but we don't—we didn't say, and it's not fair to read in, Oh, and by the way, if the order is overturned on appeal, the lease gets handed back to MOA. No, but you could have put in the stipulation extending the time, as Judge Giardini indicated. We reserve the right to argue under D-IV that it's not a lease. That would have—so I agree with you. They're arguing implicit waiver. They're arguing we're not doing something like that. Yes. But you could have done that, right? Well, what we did in the stipulations, Your Honor, say that, generally speaking, other rights are preserved. So—but if their reading is correct, no one will enter into these ordinary court stipulations ever again, because if you stipulate to an extension of time, then that means if we get to the hearing and you lose, you automatically agree to their merits arguments, especially one that they didn't present. They never said in the bankruptcy court that there's a problem under 365 D-IV Fortitude. It was the first time in their reply brief in the Supreme Court that they ever raised that theory, which goes to Judge McMahon's second point. This was never raised before. This was never argued before. So, of course, they didn't have to anticipate and argue it before it was actually raised. It's not as if—and Judge Giardini asked this to Mr. Silbert. I'm curious what your views are. Yes, Your Honor. It could have been raised, or it wasn't as if this was the first opportunity to raise this. This could have been raised and avoided years of litigation. Yes. Right? So why not? Yes, Judge Bianco. But it's not clear whether it would have been recharacterized or not. We think that probably, yes— I thought you were saying it's so obvious under RPI that, of course, it would have been. But I think that's right, Judge Giardini. I mean, now you're kind of saying, well, our RPI argument is pretty weak or it's pretty iffy. No, no. No, no. Judge Giardini, you're absolutely right. I think, yes, it would be recharacterized. But the court made clear in both RPI and PCH it didn't matter. In PCH, this court said expressly, we're not going to decide whether the bankruptcy court was correct in recharacterizing it as a joint venture. It doesn't matter. Following the Ninth Circus decision, Meredjia—actually, Meredjia came after PCH— that this is not the kind of lease that Congress intended 365D-4 to apply to, and it would be grossly inequitable. If I could have one minute on this. In essence, you end up with a legal determination based on reading of the statute, the legislative history, and so on. Yes, Judge Carney. Parties can't stipulate to a different interpretation of the statute. In essence, there was a legal determination that was made that the parties can't contravene by their own stipulation except as to waiving an argument. That's right, Judge Carney. But the relevant facts were basically undisputed in the district court, and she summarized them correctly. And they never objected in the district court to Judge McMahon going through and reciting all the characteristics of this lease. And they didn't for good reason. They had been living with that set of facts at every stage of this litigation. And those facts demonstrate how this is unquestionably on par with RPI. And as binding circuit precedent for 30 years that the bankruptcy courts have been applying without problem in these cases over and over again, we think that Judge McMahon got it absolutely right for all the right reasons. How much, if at all, does your waiver argument depend on what the state of the background law is? In other words, RPI dealt with D-1-4, right? And I understand your opponent says, well, unexpired lease has got to mean the same thing all throughout 365. It makes absolutely no sense to have an unexpired lease mean different things in different parts of 365, or even arguably within different parts of 365D. That's just nonsensical. But we've never dealt with it, right? So would it be different if we had a case that said that? Let's say we had some case that had said that they're absolutely right. If you're an unexpired lease, you can recharacterize it under RPI for all purposes of 365 or not at all. Yes. But that because it's an open question, your side isn't entitled to legitimately say, look, when we stipulate that something's applicable under B-3, that's not necessarily a stipulation that it also applies to D-1-4. We could later say, no, no, we can't do that. But at least in terms of a forward-looking stipulation, someone agreeing to something under one subsection isn't necessarily a stipulation under another subsection. We at least would have a good-faith argument because there's no law that said one can't do it. That's one component, I suppose, if I understand correctly, of your argument about why your stipulation of B-3 doesn't count under D-1-4. It may turn out to be wrong. Would your argument then be different if, again, project ourselves to a hypothetical point 25 years in the future where let's say in some other case we had had reason to say that your opponent was absolutely right. It's all one or all the other. If you're an unexpired lease for one purpose under 365 for all other purpose, and then a stipulation has to be interpreted against that background rule, would that be a different situation? A bit different, Your Honor. But I think here's to crystallize the point. All the parties were doing clearly in these stipulations were resolving issues they weren't going to litigate. They decided to say we're not going to litigate whether this is in the shopping center. They decided not to litigate. They were hoping. I mean, you guys were assuming or hoping it was going to be soon assigned. So the other way to look at it is you were putting all your eggs in one basket, and when the court took away your basket, you're left with nothing. And then you're saying, well, wait a minute. I want to pick up another basket here. But your response would be, wait, you don't get to do that after five years of bouncing all the way to the Supreme Court and back and saying, you know what? We apologize to all of you judges. But all of that was completely irrelevant for five years. We just didn't notice. That seems like a big nut to swallow. Well, but first, Your Honor, it was never in controversy in the bankruptcy court that they had this forfeiture theory. Because you didn't put it in controversy. But it was their burden to raise all of their objections and to say with the relief that they wanted. They were, in essence, the plaintiff. They objected on very specific grounds.  Yes, Your Honor. But they do think it's a lease. Why would they contest it? They do think it's a lease, and it shouldn't have been transformed. You're the ones who think it's not a lease. So why would they be the ones to say, oh, and by the way, the other side has a really bad argument they haven't raised. And if they were to raise a, in our view, a bad argument, they would lose. Why would any party raise the other side's argument just to shoot it down? Sure. Why would they do that? That's right. But the parties were treating this as a lease. And then with that assumption in place for the purposes for which this transaction was being conducted. And then RPI gives us the answer. It doesn't matter whether it was a lease or it was recharacterized as something else. This is not the kind of lease. I just want to. Yes, Judge Johnson. Mr. Nardini, this is very important about whether we need to interpret all the provisions of the statute and make a decision of whether lease means the same thing for all provisions. Here, if we conclude under D4, RPI controls, and therefore it's not a lease under D4. Yes. The only other determination we have to make is waiver. Waiver or no waiver, right?  And on that issue, if there was a case, going back to Judge Nardini's hypothetical, where we said lease for all the different provisions means exactly the same thing. That might go to the issue of whether or not there was an intentional waiver or not. Certainly if that case was out there and you entered a stipulation calling it a lease under the shopping center lease, then an argument can be made, of course they intentionally waived this. They know that we've treated this as the same, but there was no such case out there, right? That's correct, Judge Bianca. So it all goes, the statute of interpretation, it doesn't have to be done independently. It only bears on possibly whether or not there was an intentional relinquishment of this argument. Right, because we weren't relinquishing anything because in the Second Circuit, the established law for over 33 years has been it doesn't matter. And so, but that applies to the facts of this case. All right. The important point, though, is that Judge McMahon didn't abuse her discretion in construing the stipulation. She did act as a trial court. She did not send it back down to the bankruptcy court. They never objected to her keeping the case and acting like a trial court. So, yes, the abuse of discretion standard does apply. We raised a bunch of arguments in our cross appeal. Unless their court has questions on that in our cross appeal, then I guess, I see I'm over my time. Unless Your Honor will give me a minute to make those points, then I'll re-rest on our briefs. Well, thanks. We're good at reading the briefs. Thank you, Your Honor. All right. Give us three minutes to rebut. Thank you, Your Honors. With respect to the question whether the stipulation about 365D4 was a stipulation about the forfeiture provision, 365D4 starts with, subject to paragraph B, which is uninvolved here, an unexpired lease of non-residential property under which the debtor's lessee shall be deemed rejected and the trustee shall immediately surrender if. And then the timing provisions is the in order to avoid that. It is all about forfeiture. It is all about immediate surrender. That is the consequence. You can't separate these two things out. Moreover, although they would like to characterize it as though these are very discreet stipulations, the lead stipulation was, and this is on A1643, that they are parties to a lease of non-residential property, which is how they define the term lease, which is then later referenced in the stipulation to extend the deadline. The party stipulated over and over and over that this was a lease for purposes of Section 365, and they did it specifically with respect to the forfeiture provision. That shall surrender. I know you don't think it's an abuse of discretion standard, but let's say we disagree with you on that. Name a case where a district court judge has said, I find no waiver here, where this court has overruled that and said, no, you've abused your discretion as a district court judge. I don't have a case on my mind. I'm not sure there are any. If there are, they're pretty rare. But these are all readings of documents. It is not as though testimony were taken. These are all readings of documents, which I think would be based on her, and also we know that an abuse of discretion. No, it's the intent of the parties. What do the parties intend? And the district court judge is presiding over the proceedings, who's dealing with briefings on multiple issues. The stipulations are certainly part of that, but it's broader than stipulations. It's how these issues would have raised, how they would have fallen, what order would they have been taken in. That's what district courts do. But, Your Honor, it also is based upon an error of law, which is the court's misreading of RPI. And with respect, the question that both of you have asked about whether there was a decision 25 years before that said that 365 should be read as a whole, there is such a case, and it is the PCH case, in which the court said that lease has to have the same meaning in 365 as it has in Section 502, because the terms are construed the same across the bankruptcy code. And it is actually not just construing 365d-4. It is construing 365d-3, which is the requirement to continue to pay rent on the lease. Has the PCH actually held, in your view, that the word lease is used consistently throughout the multiple subparts of a complicated statute, 363? I thought it was focusing on the subsection 363 as it should be read in connection with 502. And that 363 is pages and pages of multiple subsections that have been used and revised over time. I find that it's a little bit of an overstatement, maybe, to say that PCH resolved that for all time. This is at page 199 of the decision, Your Honor. It says, we have no difficulty applying Section 502B, which is a requirement of a bona fide lease, to Section 365d-3 and 4, because these sections read together are part of a total scheme designed to set forth the rights and obligations of landlords and tenants in bankruptcy proceedings. All of these provisions of 365 are part of a whole, including what are the protections that the landlord has, what are the protections the landlord has if it's going to be assigned as a shopping center lease, all are part of a whole. Can I just jump in there? Because it seems to me there are arguably two distinct questions, right? One is, how is the statute properly read? You know, 365, in your view, unexpired lease, has to have a uniform meaning throughout. And I understand that, and I think there's a lot of appeal to that argument, right, that terms have to be construed consistently, particularly within a section or subsection. But if our court hadn't ever said that with respect to 365, we have PCH and RPI that could arguably be read to say, well, we have this kind of crazy thing for D-1-4. Does the other side at least have a colorable argument? Maybe it fails. That, no, you know, you have special rules. You know, RPI does this thing where they recharacterize things and look at the economic reality of things. Do they at least have a colorable argument to say, well, you know, maybe there are different meanings for unexpired lease in different parts. Maybe they're wrong. But if we've never said that before and they at least have a colorable argument that there's a difference, isn't that the key question for imputing an intention to them when they file these stipulations, say, well, they must have been agreeing that there's one uniform meaning for everything. And if they stipulate to lease for one purpose of one subsection, they must in their brains be necessarily conceding that they can't argue RPI applies only to part of 365. That's, I think, what you need to be arguing, right? I think that we don't believe that it's a subjective test because we don't have any insight into what's in their mind. And if we're going to go through the requirement to say for this purpose and that purpose and the other purpose, then stipulations are going to be pages and pages and pages long. And so the question is, what is the objective intent? And we rely on there are three stipulations in which they say it's a lease. The very first one, they say it's a lease of real non-residential real property. Then they say it is a shopping center lease for purposes of the shopping center lease provision. And then they say it is subject to the provisions of Section 365 D4. And that provision is and is only a forfeiture provision. All right. And so. Thank you. I think we're out of time. Thanks to everyone. We'll reserve decision. Have a good day.